**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JULIUS WHATLEY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 17-00490-B** |
| | * | |
| **NANCY A. BERRYHILL,** | * | |
| **Acting Commissioner of Social** | * | |
| **Security,** | * | |
| | * | |
| **Defendant.** | * | |

<u>**ORDER**</u>

Plaintiff Julius Whatley (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On October 24, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 20). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

# I. <u>Procedural History</u>[1]

Plaintiff filed his application for benefits on July 15, 2014, alleging disability beginning May 31, 2013, based on high blood pressure, diabetes, arthritis in his shoulders, hands, feet, and neck, high cholesterol, and acid reflux. (Doc. 11 at 35, 222, 244). Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Walter Vance Lassiter, Jr. (hereinafter "ALJ") on March 16, 2016. (<u>Id.</u> at 51). Plaintiff, who was represented by counsel, appeared by video from Selma, Alabama at the hearing and provided testimony related to his claims. (<u>Id.</u> at 57-81). A vocational expert ("VE") also appeared at the hearing and provided testimony. (<u>Id.</u> at 81-86). On July 28, 2016, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (<u>Id.</u> at 32). The Appeals Council denied Plaintiff's request for review on September 15, 2017. (<u>Id.</u> at 4). Therefore, the ALJ's decision dated July 28, 2016, became the final decision of the Commissioner.[2] (<u>Id.</u>).

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument

---

[1]  The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

[2]  Plaintiff previously filed a Title II application on June 10, 2011, which was denied. (Doc. 11 at 35).

was conducted on November 27, 2018 (Doc. 23), and the parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

1. **Whether the ALJ properly considered the opinion of Plaintiff's treating physician, Dr. Bruce Taylor, M.D.?**

2. **Whether substantial evidence supports the ALJ's Residual Functional Capacity ("RFC") determination?**

3. **Whether substantial evidence supports the ALJ's determination that Plaintiff retains the ability to perform his past relevant work?**

4. **Whether the ALJ erred by failing to fully develop the record by ordering consultative orthopedic and neurological examinations?**

5. **Whether the ALJ erred when an individual with Plaintiff's vocational profile, limited to a full range of light work and unable to perform his past work, would be found disabled under Medical-Vocational Guidelines Rule 202.06?**

## III. Factual Background

Plaintiff was born on September 8, 1959, and was fifty-six years of age at the time of his administrative hearing on March 16, 2016. (Doc. 11 at 57, 222). Plaintiff has a twelfth-grade education and attended trade school for auto body work. (Id. at 57-58, 245). Plaintiff last worked for a tree-trimming service in 2011. (Id. at 280-81). Plaintiff also formerly worked as a store laborer, lumber stacker, candy mixer, and beef boner. (Id. at 59-62, 81, 280, 282-84). He also worked jobs making concrete septic

tanks and building windows.  (Id. at 64, 285-86).

According to Plaintiff, he can no longer work because when he gets overheated, it makes him nauseous, weak, and dizzy.[3]  (Id. at 73).  In addition, he has back, neck, and shoulder pain, as well as numbness and tingling in his feet and an inability to pick up small objects with his fingers.  (Id. at 73-75).  At the time of his hearing, Plaintiff was on two medications for high blood pressure, a statin for cholesterol, Meclizine for dizziness, and Amitriptyline for numbness and tingling in his feet.  (Id. at 73-74).  He also was prescribed Tramadol for pain in his back, neck, and shoulders.  (Id. at 73).  At the hearing, Plaintiff testified that his medical treatment for diabetes has consisted of taking "about three or four" medications, but no insulin shots.  (Id. at 74).

## IV.  **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards

---

[3]    Plaintiff testified that he quit his job with a tree service because he "kept getting overheated and throwing up and getting weaker and dizzy."  (Doc. 11 at 72).

were applied.[4]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir.
1990).  A court may not decide the facts anew, reweigh the
evidence, or substitute its judgment for that of the Commissioner.
Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The
Commissioner's findings of fact must be affirmed if they are based
upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235
(11th Cir. 1991).  "Substantial evidence is more than a scintilla,
but less than a preponderance" and consists of "such relevant
evidence as a reasonable person would accept as adequate to support
a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th
Cir. 1983).  In determining whether substantial evidence exists,
a reviewing court must consider the record as a whole, taking into
account evidence both favorable and unfavorable to the
Commissioner's decision.  Chester v. Bowen, 792 F.2d 129, 131 (11th
Cir. 1986) (per curiam); Short v. Apfel, 1999 U.S. Dist. LEXIS
10163, at *4 (S.D. Ala. June 14, 1999).

## V.   Statutory and Regulatory Framework

An individual who applies for Social Security disability
benefits must prove his or her disability.  20 C.F.R. §§ 404.1512,
416.912.  Disability is defined as the "inability to engage in any
substantial gainful activity by reason of any medically

---

[4] This Court's review of the Commissioner's application of legal
principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th
Cir. 1987).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven his or her disability. See 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she is not engaged in substantial gainful activity. Carpenter v. Comm'r of Soc. Sec., 614 F. App'x 482, 486 (11th Cir. 2015) (per curiam). The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. Id. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. Id. If the claimant cannot prevail at the third step, the ALJ must determine the claimant's residual functional capacity ("RFC") before proceeding to step four. Id. A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his or her impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Once a claimant's RFC is determined, the evaluation proceeds to the fourth step, where the claimant must prove an inability to perform his or her past relevant work. Carpenter,

614 F. App'x at 486.

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's RFC, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the burden then shifts back to the claimant to prove his or her inability to perform those jobs in order to be found disabled. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI. __The ALJ's Findings__

In the case *sub judice*, the ALJ found that Plaintiff has the non-severe impairments of type two diabetes, benign hypertension, esophageal reflux disease, unspecified insomnia, history of gastroparesis, history of mononeuritis of the left lower extremity, possible history of lumbago, and possible history of cervicalgia which, when considered in combination, are severe. (Doc. 11 at 38). The ALJ found that Plaintiff's impairments, when considered individually and in combination, do not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525,

404.1526, 416.920(d), 416.925, and 416.926). (Id.). The ALJ
further found that Plaintiff has the RFC to perform medium work as
defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the
following additional limitations: Plaintiff can stand and/or walk
for at least two hours without interruption and at least six hours
over the course of an eight-hour workday; Plaintiff can sit for at
least two hours without interruption and at least six hours over
the course of an eight-hour workday; Plaintiff can occasionally
crawl and can occasionally climb ramps, stairs, ladders, and
scaffolds; Plaintiff cannot climb ropes, poles, or trees;
Plaintiff can frequently balance, stoop, kneel, and crouch;
Plaintiff can occasionally work in poorly ventilated areas;
Plaintiff cannot work at unprotected heights; and Plaintiff can
frequently operate motorized vehicles and operate hazardous
machinery. (Id. at 39). The ALJ concluded that Plaintiff is able
to perform his past relevant work as a beef boner, candy mixer,
store laborer, and tree-trimmer helper, both as actually performed
and as generally performed. (Id. at 46-47). Thus, the ALJ found
that Plaintiff is not disabled. (Id. at 47).

## VII. <u>Discussion</u>

### A. Substantial evidence supports the ALJ's assignment of weight to the opinions of Plaintiff's treating physician, Dr. Bruce Taylor, M.D.

In his brief, Plaintiff argues that the ALJ erred in failing

to assign at least deferential weight to the opinions of his treating primary care physician, Dr. Bruce Taylor, M.D., that his back and neck pain, dizziness, and gait instability prevent him from being able to work. (Doc. 14 at 6-10). The Commissioner counters that the ALJ properly considered Dr. Taylor's opinions concerning Plaintiff's functional limitations and gave valid reasons for according the opinions little weight. (Doc. 17 at 4-5). The Commissioner further argues that substantial evidence supports the ALJ's assignment of weight to Dr. Taylor's opinions. (Id. at 5). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, at *4, 2009 WL 413541, at *1 (M.D. Fla. Feb. 18, 2009).

The ALJ must give "substantial weight" to the opinion of a claimant's treating physician, unless "good cause" exists for not doing so. Costigan v. Comm'r, Soc. Sec. Admin., 603 F. App'x 783, 788 (11th Cir. 2015) (per curiam) (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004)). "The opinion of

a one-time examining physician" is not entitled to the same deference as that of a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, at *50, 2010 WL 989605, at *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). Also, an "ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Milner, 275 F. App'x at 948 (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause to discredit the testimony of *any* medical source exists when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, at *8, 2012 WL 3155570, at *3 (M.D. Ala. Aug. 3, 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock, 764 F.2d at 835 (citation omitted);

see also Adamo v. Comm'r of Soc. Sec., 365 F. App'x 209, 212 (11th Cir. 2010) (per curiam) ("The ALJ may reject any medical opinion if the evidence supports a contrary finding.").

The record shows that Dr. Taylor treated Plaintiff periodically for various ailments from December 2011 through December 2015.[5] (See id. at 319-32, 348-416). After the alleged onset date of May 31, 2013, Plaintiff did not seek treatment from Dr. Taylor until September 13, 2013, and at that time, he reported chest pain, reflux symptoms, and difficulty sleeping. (Id. at 240, 322). Plaintiff's glucose level on that date was 294; his blood pressure was 135/84; and his physical examination findings were normal. (Id. at 240, 322-23). Plaintiff was diagnosed with pure hypercholesterolemia, uncontrolled diabetes, benign essential hypertension, esophageal reflux, and unspecified insomnia, for which he was prescribed medications and instructed on diet and monitoring of his blood pressure and blood sugar. (Id. at 323-27).

From 2014 through August 2015, Dr. Taylor regularly treated Plaintiff for diabetes and high blood pressure with medication and instructions for home monitoring. (Id. at 359-60, 363-66, 377,

---

[5]     At his initial visit to Dr. Taylor on December 19, 2011, Plaintiff complained of back and shoulder pain, and the nurse practitioner noted: "He tries to answer yes to almost every pain related question.  Openly states he is trying to get disability." (Doc. 11 at 414).

386-87, 392-93).  During that time, Plaintiff's blood pressure and blood sugar readings were frequently high, but his physical examination findings were consistently normal. (Id.).

On October 1, 2014, Plaintiff was examined by consultative medical examiners Dr. Miciara Hernandez, M.D., and Dr. Maria Oquendo, M.D.  (Id. at 337-41).  During the examination, Plaintiff reported that he followed a low salt diet, that his highest blood pressure readings at home had been a systolic of 150 and a diastolic of 119, and that he exercised by walking.  (Id. at 337).  Plaintiff denied chest pain, palpitations, and shortness of breath, and a review of systems showed no cardiovascular, pulmonary, gastrointestinal, genitourinary, or neurological symptoms.[6]  (Id. at 337, 339).  It was noted that Plaintiff's cholesterol was high, and his blood pressure was 163/99.  (Id. at 338-39).  In addition, a neurological examination produced an abnormal monofilament test.  (Id. at 339).  Plaintiff's physical examination findings on that date were largely normal, including normal heart; normal lungs; no neurological symptoms; no acute distress; alert and oriented; normal strength and sensation; normal gait; normal muscle tone and strength; no weakness; no atrophy; and no abnormal movement.  (Id.).  Plaintiff was assessed

---

[6] Plaintiff did not mention back pain, neck pain, dizziness, or gait instability.

with benign essential hypertension, diabetes mellitus with other specified manifestations, and peripheral neuropathy. (Id. at 340). Drs. Dr. Hernandez and Oquendo recommended "glycemic and lipid control" and that Plaintiff's blood pressure medication be adjusted. (Id.). No functional limitations were assessed. (Id.).

With respect to Plaintiff's back, neck, and extremity pain, Plaintiff presented to Dr. Taylor on October 14, 2014, and November 25, 2014, with complaints of low back pain that radiated into his right leg. (Id. at 377, 380). Plaintiff's physical examination findings on both occasions were unremarkable. (Id. at 378, 381). Dr. Taylor diagnosed unspecified thoracic or lumbosacral neuritis or radiculitis and lumbago and prescribed Robaxin and Tramadol for his lower back pain. (Id.). At the November 2014 visit, Dr. Taylor noted that Plaintiff reported that the medication was helping with his back pain, and he did not take it often. (Id. at 377). In addition, Plaintiff reported feeling well on that date and denied headaches, vision problems, chest pain, shortness of breath, and malaise. (Id.).

On February 26, 2015, Plaintiff presented to Dr. Taylor with additional complaints of left shoulder/arm and leg pain that was alleviated by Gabapentin. (Id. at 365-66). Plaintiff's physical examination findings remained normal. (Id.). Dr. Taylor diagnosed Plaintiff with unspecified thoracic or lumbosacral neuritis or radiculitis, and, in addition to his other medications, prescribed

Gabapentin. (Id.). Plaintiff returned on May 26, 2015, reporting pain in both arms, "on and off" lower back pain, problems with both wrists, and occasional numbness in his fingers. (Id. at 363). Plaintiff's physical examination findings again were normal. (Id. at 363-64). Dr. Taylor prescribed pain medication, a muscle relaxer, and Amitriptyline for nerve issues. (Id. at 364).

On August 26, 2015, Plaintiff returned with complaints of light-headedness and stomach pain upon waking up in the morning, as well as shoulder and neck pain. (Id. at 359). Plaintiff reported feeling well on that date and denied headaches, vision problems, chest pain, shortness of breath, and malaise. (Id.). Plaintiff's blood pressure was 170/96; his blood glucose was 274; and his physical examination findings remained unremarkable. (See id. at 360). Dr. Taylor diagnosed Plaintiff with dizziness and giddiness, esophageal reflux, benign essential hypertension, uncontrolled diabetes with neurological manifestations, pain in joint involving shoulder region, cervicalgia, and unspecified thoracic or lumbosacral neuritis or radiculitis. (Id.). Dr. Taylor adjusted Plaintiff's blood pressure and diabetes medications. (Id.).

On September 25, 2015, Plaintiff returned with multiple complaints, including dizziness and gait instability, low back pain radiating into his legs and causing difficulty with sitting and standing, and neck pain that was severe at times but improved

with Tramadol. (Id. at 356). Plaintiff also reported that he had recently fallen. (Id.). Plaintiff's blood pressure was 126/79, and his non-fasting blood glucose level was 232. (Id. at 357). Plaintiff had a positive straight leg raise test, but his physical examination findings were otherwise normal. (See id.). Dr. Taylor diagnosed Plaintiff with dizziness and giddiness, uncontrolled diabetes with neurological manifestations, unspecified acute sinusitis, and unspecified vitamin D deficiency. He adjusted Plaintiff's diabetes medication and prescribed amoxicillin for a sinus infection. (Id.).

Plaintiff's last date of treatment with Dr. Taylor on record is December 28, 2015. On that date, Plaintiff reported sinus issues, dizziness, and bilateral hand cramps for several days. (Id. at 348). However, Plaintiff also reported that he felt well, and he denied headaches, vision problems, chest pain, and shortness of breath. (Id.). Plaintiff's blood pressure was 154/92. Dr. Taylor noted that Plaintiff had not been checking his blood pressure or blood sugar on a regular basis, and that his blood sugar reading was elevated at 338.[7] (Id. at 348-49). Dr. Taylor

---

[7] Plaintiff admitted that his blood sugar was uncontrolled as a result of his own failure to follow the recommended diabetic diet closely, and the record demonstrates that he failed to monitor his blood pressure and blood sugar as instructed. (Doc. 11 at 322, 348, 377, 387).

diagnosed Plaintiff with uncontrolled diabetes, hand cramps, peripheral vertigo, vitamin D deficiency, and benign essential hypertension and prescribed a mineral supplement, Claritin (for sinus symptoms), Tramadol (for pain), Metformin (for diabetes), and Lovastatin (for high cholesterol). (Id. at 349).

On September 25, 2015, Dr. Taylor completed a Clinical Assessment of Symptoms, Pain, Fatigue and Weakness (CAP) form and a Disability Questionnaire. (Id. at 343, 345). On the CAP form, Dr. Taylor opined that Plaintiff had pain, fatigue, and/or weakness "to such an extent as to be distracting to adequate performance of work and daily activities;" that Plaintiff's back and neck pain were his most serious symptoms; that physical activity such as walking, standing, lifting, or reaching would greatly increase Plaintiff's symptoms and cause distraction from and inability to complete tasks; that side effects from Plaintiff's prescribed medication would have significant impact on his ability to perform full-time work activity and would limit Plaintiff's effectiveness due to drowsiness and inattention; and that Plaintiff had been functioning at this level for nine years. (Id. at 343). Similarly, in the Disability Questionnaire, Dr. Taylor opined that Plaintiff cannot perform the physical and mental demands of sustained work activity; that Plaintiff "has severe neck & back pain that prevents him from walking or standing over 15 minutes[,] [and] [h]e has developed dizziness & gait instability;" that the

16

onset date for these conditions was nine years ago; that Plaintiff's prescribed medications would interfere with his ability to function "because they cause drowsiness & decreased concentration;" and that due to the listed conditions, Plaintiff is unable to do a combination of sitting, standing, and walking in an eight-hour day, without rest. (Id. at 345).

The ALJ assigned Dr. Taylor's opinions in the CAP form and Disability Questionnaire "little weight". He found that the opinions were uncorroborated by and inconsistent with the objective medical evidence in the record, including Dr. Taylor's own treatment records. (Id. at 45). As the ALJ noted, Dr. Taylor's physical examination findings, with few exceptions, were largely normal; Dr. Taylor treated Plaintiff's symptoms (including his back, neck, shoulder, and extremity pain and dizziness) conservatively with medication; the pain medication helped; Dr. Taylor never referred Plaintiff to a physical therapist or to any type of specialist for treatment of his conditions or symptoms; Dr. Taylor did not order x-rays of Plaintiff's neck or back; and, although Dr. Taylor opined that Plaintiff's conditions and resulting severe functional limitations had existed for nine years (since 2006), it is undisputed that Plaintiff worked not one, but two jobs, until 2011. (Id. at 45, 280).

In addition to being inconsistent with his own treatment records, Dr. Taylor's opinions are inconsistent with the largely

normal physical examination findings of consultative examiners, Drs. Hernandez and Oquendo, who assessed no functional limitations as a result of Plaintiff's diabetes, high blood pressure, or neuropathy. (Id. at 337-41). Dr. Taylor's opinions also are inconsistent with Plaintiff's activities of daily living, which include caring for himself, driving daily, attending church regularly, attending doctors' appointments by himself, walking for exercise, helping with household chores such as laundry and dishes, cooking, shopping, writing, and handling his own finances. (Id. at 77-79, 271, 273-74). As the ALJ found, the foregoing evidence is inconsistent with Plaintiff's claims of debilitating and disabling back, neck, and extremity pain, dizziness, and gait instability.

In sum, the foregoing substantial evidence reflects that the opinions expressed by Dr. Taylor in the CAP form and Disability Questionnaire were inconsistent with Dr. Taylor's own records and the record as a whole. Therefore, the ALJ had good cause to discredit those opinions.

### B. Substantial evidence supports the ALJ's RFC assessment for a range of medium work with the stated restrictions.

In his brief, Plaintiff argues that the ALJ's finding that he can perform a range of medium work is not supported by substantial evidence given his impairments, discussed in detail above. (Doc. 14 at 10). The Government counters that the ALJ expressly

considered these impairments and that the RFC is fully supported by the substantial evidence. (Doc. 17 at 6-8). Having carefully reviewed the record in this case, the Court finds that Plaintiff's claim is without merit.

Residual functional capacity is a measure of what a claimant can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, at *9-10, 2012 WL 997222, at *3-4 (M.D. Ala. Mar. 23, 2012). Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet his burden in this case.

As discussed, in the ALJ's decision, the ALJ found that Plaintiff had the following non-severe impairments that were severe in combination: type two diabetes, benign hypertension, esophageal reflux disease, unspecified insomnia, history of gastroparesis, history of mononeuritis of the left lower

extremity, possible history of lumbago, and possible history of cervicalgia. (Doc. 11 at 38). The ALJ further determined that Plaintiff has the RFC to perform a range of medium work with the following restrictions: Plaintiff can stand and/or walk for at least two hours without interruption and at least six hours over the course of an eight-hour workday; Plaintiff can sit for at least two hours without interruption and at least six hours over the course of an eight-hour workday; Plaintiff can occasionally crawl; Plaintiff can occasionally climb ramps, stairs, ladders, and scaffolds; Plaintiff cannot climb ropes, poles, or trees; Plaintiff can frequently balance, stoop, kneel, and crouch; Plaintiff can occasionally work in poorly ventilated areas; Plaintiff cannot work at unprotected heights; and Plaintiff can frequently operate motorized vehicles and operate hazardous machinery. (Doc. 11 at 39).

Based on the evidence detailed above, specifically including Dr. Taylor's treatment records, which reflect conservative treatment resulting in largely normal examination findings, along with the consultative examination report and Plaintiff's activities of daily living, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff can perform a range of medium work, with the stated restrictions.[8]  Indeed,

_____

[8]     Although Plaintiff has cited evidence in the record which he claims supports a finding that he is disabled, that is, at best,

Plaintiff has failed to show that any limitations caused by his impairments either exceed the RFC or are not accommodated by the RFC and its stated restrictions.  Accordingly, Plaintiff's claim must fail.[9]

---

a contention that the record evidence supports a different finding. That is not the standard on review.  The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Comm'r of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, at *15-16, 2017 WL 4992021, at *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").

[9]    The Court finds unpersuasive Plaintiff's argument that the ALJ erred in failing to mention and assign weight to the Physical RFC Assessment form prepared on October 15, 2014, by State agency single decision-maker ("SDM"), Tracy Gulledge. (Doc. 14 at 12). To the contrary, because the "SDM" designation connotes no medical credentials, "a finding from such an individual is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources." Bolton v. Astrue, 2008 U.S. Dist. LEXIS 38568, at *10-11, 2008 WL 2038513, at *4 (M.D. Fla. May 12, 2008) (internal quotation marks and citation omitted).  District courts within the Eleventh Circuit "have uniformly held that a residual functional capacity assessment from a single decision-maker does not constitute substantial evidence to support an ALJ's decision." Hall v. Astrue, 2012 U.S. Dist. LEXIS 86838, at *6, 2012 WL 2499177, at *2 (N.D. Ala. June 22, 2012).  Indeed, the ALJ would have erred had he afforded any weight, even minimal weight, to Ms. Gulledge's assessment.  See Hall, 2012 U.S. Dist. LEXIS 86838, at *9, 2012 WL 2499177, at *3.  Accordingly, Plaintiff's argument is without merit.

**C. The ALJ complied with SSR 82-62, and his determination that Plaintiff is able to perform past relevant work is supported by substantial evidence.**

Plaintiff next argues that the ALJ erred in concluding that he can return to his past relevant work as a beef boner, candy mixer, store laborer, and tree trimmer helper (groundsman), without making any specific findings regarding the physical demands of the work as required by Social Security Ruling 82-62 ("SSR 82-62"). (Doc. 14 at 13). Plaintiff also argues that the ALJ failed to sufficiently develop the record by attempting to obtain detailed information about the physical requirements of Plaintiff's past work. (Id.). The Commissioner counters that substantial evidence supports the ALJ's finding that Plaintiff retained his ability to perform his past relevant work and that Plaintiff failed to meet his burden of establishing an inability to perform past relevant work. (Doc. 17 at 8-9). The Court agrees.

A claimant bears the burden of showing that he can no longer perform his past relevant work as he actually performed it, or as it is performed in the general economy. Waldrop v. Comm'r. of Soc. Sec., 379 F. App'x 948, 953 (11th Cir. 2010) (per curiam) (citing Jackson v. Bowen, 801 F.2d 1291, 1293-94 (11th Cir. 1986) (per curiam)). Even though a claimant has the burden of showing

he can no longer perform his past relevant work, the Commissioner has the obligation to develop a full and fair record. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). To develop a full and fair record, an ALJ must consider all of the duties of that past relevant work and evaluate a claimant's ability to perform the past relevant work in spite of his impairments. Levie v. Comm'r of Soc. Sec., 514 F. App'x 829, 831 (11th Cir. 2013) (per curiam).

SSR 82-62 requires the ALJ, when finding that an individual can perform past relevant work, to make the "following specific findings of fact: 1. A finding of fact as to the individual's RFC. 2. A finding of fact as to the physical and mental demands of the past job/occupation. 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation."[10] SSR 82-62, 1982 SSR LEXIS 27, at *10, 1982 WL 31386, at *4 (1982). A claimant is the primary source for vocational information, and "statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 SSR LEXIS 27, at *6-7, 1982 WL 31386, at *3.

---

[10] Plaintiff concedes that the ALJ's decision contains specific findings of fact as to his RFC and that his RFC would permit a return to his past jobs or occupations. However, Plaintiff asserts that the ALJ failed to make the required findings of fact as to the physical demands of his past work. (Doc. 14 at 13).

As noted, "the claimant must show that he is not 'able to perform his past *kind* of work, not that he merely [is] unable to perform a specific job he held in the past.'" Douglas v. Comm'r of Soc. Sec., 486 F. App'x 72, 74 (11th Cir. 2012) (per curiam) (quoting Jackson, 801 F. 2d at 1293); see also Williams v. Astrue, 2009 U.S. Dist. LEXIS 130299, at *14-15, 2009 WL 1922208, at *5 (M.D. Fla. July 2, 2009).

"[W]here it is determined that a claimant can perform a past job as it is usually performed in the national economy, an ALJ may rely upon job descriptions set forth in the Dictionary of Occupational Titles." Williams, 2009 U.S. Dist. LEXIS 130299, at *15, 2009 WL 1922208, at *5. The occupational descriptions set forth in the DOT provide information about the demands of jobs as they are actually performed in the national economy, which is sufficient to describe the physical and mental demands of a claimant's past relevant work as it was actually performed in the national economy. Newton v. Astrue, 2008 U.S. Dist. LEXIS 110174, at *45-46, 2008 WL 915923, at *13 (N.D. Ga. Apr. 1, 2008). ALJs are required to take administrative notice of the DOT, and the DOT is recognized by the Social Security Administration as a reliable, authoritative government source. Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1364-65 (11th Cir. 2018). In addition, although vocational expert testimony is not required to determine whether a claimant can perform his past relevant work, such

testimony may be considered in the step four evaluation.  Hennes

v. Comm'r of Soc. Sec. Admin., 130 F. App'x 343, 346 (11th Cir.

2005) (per curiam).

In this case, Plaintiff provided vocational documentation in

the form of two work history reports.  (Doc. 11 at 251-57, 279-

87).  In the first work history report, Plaintiff described his

work as a "ground man" with a tree service from 2003 to 2011, which

entailed cutting limbs off trees near power lines, placing cut

limbs in piles, and picking up and putting loose branches in a

truck.  (Id. at 252).  In the report, Plaintiff listed the lifting,

carrying, postural, and manipulative requirements of the job.  (See

id.).  Plaintiff provided another work history report shortly

thereafter, where he provided information regarding his tree

service job, as well as his jobs as a store laborer, lumber

stacker, candy maker, septic tank maker, and window maker.  (Id.

at 280-86).  For these jobs, Plaintiff provided brief job

descriptions and listed postural, exertional, and manipulative

requirements.  (See id.).

At the administrative hearing, the ALJ questioned Plaintiff

at length about his work history, and Plaintiff testified at length

about his former job duties as a beef boner, tree trimmer, truck

stop worker, and candy mixer.  (Id. at 59-66).  The VE, who had

the benefit of both Plaintiff's testimony and his work history

reports, opined at the hearing that Plaintiff's "past work would

be that of a beef boner which would be medium, semi-skilled, SVP: 4, *DOT* 525-684-010; a candy mixer, medium, semi-skilled, SVP: 2, *DOT* 520.684-014; a store laborer, this is the Mr. Roy's, medium, unskilled, SVP: 2. He indicated light in his performance based on Exhibit B7E [work history report], *DOT* 922.687-058." (Id. at 81). The VE also provided two jobs for Plaintiff's tree work, one based on the information in the work history reports and one based on Plaintiff's testimony at the hearing. First, the VE noted that Plaintiff had just testified that he climbed trees and worked from a bucket, which corresponded to the job of tree trimmer, "heavy, semi-skilled, SVP: 4, *DOT*: 408.664-010." (Id. at 82). The VE also noted that "in the record [Plaintiff] had referred to himself as a groundsman and that would be a tree trimmer helper, medium, unskilled, SVP: 2, *DOT* 408.667-010." (Id.).

After the VE's testimony concerning Plaintiff's past relevant work, the ALJ posed a number of hypotheticals to the VE, including a complete hypothetical containing all the functional limitations consistent with the Plaintiff's RFC. (See id. at 82-83). The VE noted that the hypothetical would allow for the performance of the previously identified positions of beef boner, candy mixer, store laborer, and tree trimmer helper, but not the heavy work of tree trimmer. (Id. at 83).

Based on the VE's testimony (which the ALJ found to be based on and consistent with the DOT), the ALJ found that Plaintiff "is

26

capable of performing past relevant work as a beef boner, candy mixer, store laborer, and a tree trimmer helper.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity."  (Id. at 46-47) (internal citations omitted).

Based on the foregoing, the Court finds that the record contained sufficient evidence regarding the physical and mental demands of Plaintiff's past relevant work, including testimony by Plaintiff and work history reports that provided information regarding the exertional, postural, and manipulative requirements of Plaintiff's former jobs.  Additionally, the ALJ permissibly relied on the VE's testimony regarding Plaintiff's past relevant work, both as it was actually performed and as it is generally performed.  While SSR 82-62 requires "that care 'be taken to obtain a precise description of the particular job duties' at issue, the ruling only requires that sufficient documentation be obtained 'to permit a decision as to the individual's ability to return to such past work.'"  Nobles v. Astrue, 2009 U.S. Dist. LEXIS 9389, at *6, 2009 WL 275643, at *2 (M.D. Ala. Feb. 5, 2009) (quoting SSR 82-62, 1982 SSR LEXIS 27, at *7-9, 1982 WL 31386, at *3.  There is no doubt that the record in this case contained sufficient documentation and testimony to permit an informed determination of Plaintiff's ability to perform past relevant work.

Plaintiff's argument that the ALJ violated SSR 82-62 by failing to adequately evaluate and address Plaintiff's ability to perform the physical duties of his past relevant work is unpersuasive. Even assuming *arguendo* that the ALJ failed to provide a sufficiently exhaustive analysis of the physical demands of Plaintiff's past relevant work as it was *actually* performed by Plaintiff, the ALJ nevertheless permissibly relied upon the DOT and the VE's testimony in determining that Plaintiff could return to his past relevant work as *generally* required by employers in the national economy. See Newton, 2008 U.S. Dist. LEXIS 110174, at *45, 2008 WL 915923, at *13 (finding that "the ALJ did not have to determine the physical and mental demands of Plaintiff's past relevant work as she actually performed them with great detail" because the ALJ relied on the DOT in determining whether Plaintiff could perform her past relevant work as it was actually performed in the national economy); accord Rosario v. Colvin, 2016 WL 7539700, at *7 (S.D. Fla. July 29, 2016); Parker v. Astrue, 2008 U.S. Dist. LEXIS 69244, at *28-29, 2008 WL 4195467, at *9 (M.D. Fla. Sept. 12, 2008); Nava v. Berryhill, 2019 U.S. Dist. LEXIS 685, at *23-24, 2019 WL 92620, at *7 (M.D. Fla. Jan. 3, 2019). Notably, Plaintiff has made no attempt to show that his former job duties were distinct from those listed by the VE or that the jobs identified by the VE are incompatible with the RFC as found by the

ALJ.  Therefore, he has not met his burden to show an inability to return to his past relevant work.

Based on the foregoing, the Court finds that the ALJ adequately explained his determination that Plaintiff could perform his past relevant work as a beef boner, candy mixer, store laborer, and tree trimmer helper and that the ALJ's determination is supported by substantial evidence.  Thus, Plaintiff's claim must fail.

### D. The ALJ developed a full and fair record even in the absence of additional testing and consultative examinations.

Plaintiff next argues that the ALJ failed to develop a full and fair record by, "at a minimum," not ordering a second consultative examination that included x-rays of the cervical and lumbar spine and completion of an RFC form by the examiner, as well as a neurological consultative examination.  (Doc. 14 at 1).  The Commissioner counters that it was Plaintiff's burden to produce evidence of his disabling functional limitations and that, in any event, the record contained sufficient medical evidence and other evidence to support the ALJ's findings as to Plaintiff's functional limitations.  (Doc. 17 at 11-13).  Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

It is well-established that a hearing before an ALJ in a social security case is inquisitorial and not adversarial.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir.

2007).  A claimant bears the burden of proving disability and of producing evidence in support of his claim, while the ALJ has "a basic duty to develop a full and fair record."  Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); see also Ingram, 496 F.3d at 1269.

In fulfilling the duty to conduct a full and fair inquiry, the ALJ is required to order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision.  Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988).  However, the ALJ is not required to order a consultative examination where the record contains sufficient evidence to permit the ALJ to make an informed decision.  Ingram, 496 F.3d at 1269.  Further, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record."  Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995).  In evaluating the necessity for a remand, the Court is guided by "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice."  Id. (citations and internal quotation marks omitted).

In the instant case, the record before the ALJ included the 2011-2015 treatment records from Dr. Taylor, the physician who treated and evaluated Plaintiff with regard to his allegedly disabling conditions.  These records included the results of

multiple physical examinations, blood pressure and blood glucose readings, and urinalysis and blood test results. Plaintiff was also able to obtain written form opinions from Dr. Taylor as to Plaintiff's functional limitations. The record further included Plaintiff's hearing testimony, as well as reports and questionnaires completed by Plaintiff and his sister.

Moreover, as detailed above, a consultative medical examination of Plaintiff was performed on October 1, 2014, by Drs. Hernandez and Oquendo. (Doc. 11 at 333-41). Plaintiff correctly notes that although the State agency requested a statement by the examining consultative physicians expressing their opinion of Plaintiff's ability to do work-related activities despite his impairments, they failed to provide such a statement. (<u>See</u> Doc. 14 at 17; Doc. 11 at 333-41). Plaintiff also points out that no x-rays were taken at the consultative examination. (Doc. 14 at 17). In addition, Plaintiff asserts that the examination was "cursory" and did not include a musculoskeletal examination or any additional testing aside from a visual exam. (<u>Id.</u> at 16-17). Plaintiff's contention is without merit. The record shows that the consultative examiners performed a full physical examination, which included a musculoskeletal examination. (<u>See</u> Doc. 11 at 339). Additionally, the examiners performed neurological testing, which included a monofilament test, thus contradicting Plaintiff's claim that the record does not include any testing to assess his

diabetes-related neurological manifestations. (See Doc. 11 at 339; Doc. 14 at 17).

Plaintiff cites Dillard v. Astrue, 834 F. Supp. 2d 1325 (S.D. Ala. 2011), for the proposition that the ALJ was *required* to base his assessment of Plaintiff's functional limitations on a function-by-function RFC assessment by a treating or examining physician. (Doc. 14 at 16). In other words, Plaintiff is now arguing that the forms completed by Dr. Taylor, his treating physician, were insufficient because they did not contain a function-by-function assessment "addressing limitations in [Plaintiff's] ability to stand, walk, lift, carry, climb, reach, and handle." (See id.). However, it was Plaintiff's burden to produce evidence in support of his claim, and he could have obtained a function-by-function assessment from Dr. Taylor who presumably completed the CAP form and questionnaire at the request of Plaintiff and/or his counsel. Furthermore, multiple courts have rejected the argument that an ALJ's RFC assessment is not based on substantial evidence simply because the record does not contain a formal RFC assessment by an examining medical source. an urged by Plaintiff. See, e.g., Reed v. Berryhill, 2017 U.S. Dist. LEXIS 146149, at *8, 2017 WL 3977924, at *3 (S.D. Ala. Sept. 11, 2017). Instead, the record simply must contain sufficient evidence for the ALJ to make an informed decision. See Ingram, 496 F.3d at 1269. As noted *supra*, the record in this case contained

sufficient information upon which the ALJ was able to make an informed decision.

Plaintiff also contends that the administrative record did not include any x-rays, CT scans, or MRIs to assess his musculoskeletal impairments, and he argues that, at a minimum, x-rays of his cervical and lumbar spine were necessary to allow the ALJ to determine the nature and severity of his impairments and his RFC. (Doc. 14 at 17). To the contrary, the Court has already determined that the record was sufficient to allow the ALJ to determine the nature and severity of Plaintiff's impairments and his RFC. Moreover, Plaintiff was represented by counsel, and neither Plaintiff nor his counsel suggested at the administrative hearing that the ALJ should order additional testing or consultative examinations, nor did they suggest, as Plaintiff does now, that Dr. Taylor failed to maintain detailed treatment notes, that Dr. Taylor should have ordered x-rays or MRIs or referred Plaintiff to specialists, or that the absence of x-rays or MRIs was the result of Plaintiff lacking health insurance or the ability to pay for such tests. Although the ALJ had a duty to fully and fairly develop the record, further consultative exams and tests were not necessary based on the record in this case. See Ogden v. Colvin, 2014 WL 351926, at *10 (N.D. Fla. Jan. 31, 2014) (citing Wall v. Astrue, 561 F.3d 1048, 1062-63 (10th Cir. 2009)); Ingram, 496 F.3d at 1269 (finding that the ALJ was not required to order

33

a mental consultative examination on his own motion because claimant had an obligation to raise the issue of her mental capacity at her hearing and because the ALJ had enough information to make an informed decision).

In sum, the record does not establish that a second consultative examination including x-rays of Plaintiff's cervical and lumbar spine and completion of an RFC form and an additional neurological consultative examination were necessary to enable the ALJ to make an informed decision. The ALJ had before him all of Plaintiff's relevant treatment records, including the results numerous clinical examinations over a multi-year period. The ALJ also had the record from Plaintiff's consultative examination, where Plaintiff underwent a physical examination, including a musculoskeletal and neurological examination, and an eye exam. The ALJ also had Plaintiff's testimony and documentation concerning his activities of daily living. There were no discernible evidentiary gaps in the record which resulted in unfairness or clear prejudice to Plaintiff, and Plaintiff can only speculate that additional testing would have revealed evidence to support his claim of disability. Accordingly, the ALJ did not breach his duty to fairly and fully develop the record by not ordering additional consultative examinations and tests.

### E. Plaintiff's argument that an individual with his vocational profile who was limited to "light" work and unable to perform past work would be disabled under Rule 202.06 of the Medical-Vocational Guidelines is irrelevant.

Last, Plaintiff asserts that an individual with his vocational profile, as summarized by the ALJ, would be categorized as disabled under Rule 202.06 of the Medical-Vocational Guidelines ("Grids")[11] *if* he was limited to "light" work and was unable to return to his past relevant work. (Doc. 14 at 18). The Commissioner counters that the ALJ resolved Plaintiff's claim at step four, so that Plaintiff's ability to perform other work was irrelevant to the decision. (Doc. 17 at 13). The Commissioner also points out that Plaintiff's argument is immaterial because it is based on the Plaintiff's contention that he was limited to light work, contrary to the ALJ's finding that Plaintiff was able to perform a range of medium work. (Id.). The Court agrees.

As detailed above, the ALJ found that Plaintiff could perform a reduced range of *medium* work, and that determination is supported

---

[11]    "The Grids are a series of matrices which correlate to a set of variables — the claimant's residual functional capacity, age, education, background, and previous work experience — and can be used, at step five, to determine whether claimant has the ability to adjust to other work in the national economy." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 n.4 (11th Cir. 2010) (per curiam). "On entry of these variables into their appropriate matrix, a determination of disabled or not disabled is rendered." Id.

by substantial evidence. Accordingly, the question of whether Plaintiff would be disabled under Rule 202.06 *if* he was limited to light work is irrelevant, particularly since the ALJ found at step four that Plaintiff was not disabled because he could perform his past relevant work. For each of these reasons, there was no need for the ALJ to consider step five or the possible applications of the Grids. Accordingly, Plaintiff's claim must fail.

**VIII.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**DONE** this **28th** day of **March, 2019.**

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE